IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| In re: | ) | |
|---|---|---|
| | ) | |
| Rickey Linda Thomas, | ) | Case No. 05-13551-BGC-13 |
| | ) | |
| Debtor. | ) | |
| Rickey Linda Thomas, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A.P. No. 07-00042 |
| | ) | |
| Cenlar Mortgage Company, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion
## on the Debtor's Request for an Injunction

A properly noticed foreclosure on the debtor's home was scheduled for March 20, 2007. The debtor filed the pending Complaint for Injunctive Relief at 4:31 p.m. on March 19, 2007. After a hearing at 4:35 p.m. on March 19, 2007, the Court entered an order on March 20, 2007, granting a temporary restraining order against the foreclosure. The foreclosure was rescheduled for April 24, 2007, and a trial on the request for a preliminary injunction was scheduled for March 28, 2007. That trial was continued to April 11, 2007, by agreement of the parties.

The trial was held on April 11, 2007. Appearing were the debtor; her attorney Edward Sexton; Robert Wermuth for Cenlar Mortgage Company; and Shea Patrick for the Chapter 13 Trustee. The matter was submitted on the testimony of the debtor, other evidence, the pleadings, and arguments of counsel.

### I. Findings of Fact

Cenlar filed a motion for relief from the stay in this case on June 27, 2006. The parties resolved that matter and on August 3, 2006, the Court entered an order prepared by the parties. The pertinent part of the order reads:

> IT IS FURTHER ORDERED, should CENLAR fail to receive any regular monthly payments from Debtor (beginning August, 2006) within

> the calendar month such payment comes due, and after a fifteen (15) day
> written notice of default to debtor and debtor's attorney, the stay shall lift
> automatically without further order or this Court, and CENLAR may
> proceed with foreclosure.

<u>Order</u>, entered August 3, 2006.

Cenlar contends that the debtor failed to make all mortgage payments after this order was entered and because she did, the stay lifted pursuant to that order. Cenlar argues this occurred around November 21, 2006, after Cenlar gave the debtor the written notice required by the order. That notice was introduced as Debtor's Exhibit 1 in the March 19, 2007, hearing. After giving this notice, Cenlar scheduled and properly advertised a foreclosure of the debtor's mortgage for March 20, 2007.

In response, the debtor filed a <u>Complaint for Injunctive Relief</u> at 4:31 p.m. on March 19, 2007. After notice, a hearing was held at approximately 4:35 p.m. on March 19, 2007. The debtor and her attorney Edward Sexton appeared in the courtroom. Robert Wermuth, the attorney for Cenlar Mortgage Company, appeared by telephone.

At that hearing, the debtor testified that within the 15-day notice period, she attempted to pay part of the amount due and that she made an offer to pay the balance in December. The debtor sent $800 on December 3, 2006. Cenlar held those funds until January 2007. The debtor had conversations with both New South Federal Savings Bank, the mortgagee, and Cenlar, the servicing agent for New South.

The debtor's mother died around this time without funds for a burial. The debtor and her siblings paid those costs. The debtor's portion was $2,800.

Also at the hearing on March 19, 2007, the debtor testified that New South or Cenlar refused the funds sent by the debtor but a representative told her to submit a "workout package." The debtor sent that package in January 2007. Each time she called to check on the status of the package, she was told it had not been completed but not to send money. She was told it would take 30 to 45 days to complete the package.

The debtor testified that at that time it was her understanding that the foreclosure process on her mortgage had not begun. The last time she talked with New South she was told the package was not completed. After she became aware that a notice of foreclosure had been published, she called and was told that nothing could be done until the package was reviewed.

She called Cenlar on March 19, 2007, before the hearing. They told her the package was still not complete. She was told that two people had worked on the package, but they had left and did not complete the package.

The parties agree that the arrearage amount at the time of Cenlar's notice in November to the debtor was $1,143, which represented the mortgage payments for October 2006 and November 2006. The parties agree that at the hearing on March 19, 2007, the debtor had not made her mortgage payments for October 2006, November 2006, December 2006, January 2007, February 2007, or March 2007.

At the March 19 hearing, the debtor had $1,500 to pay towards her arrears, and the debtor testified that there was equity in the property.

In summary of the events before the April 11, 2007, hearing, after the August 3, 2006, order the debtor failed to make her October 2006 and November 2006 payments. Pursuant to the order, Cenlar gave the debtor notice of the default. With that notice, pursuant to the order, the deadline for the debtor curing the default before the stay would lift was December 6, 2006. The amount to cure the default was $1,143.78.[1]

Three days before the deadline, the debtor sent Cenlar $800. Cenlar received that payment on December 12, 2006. Because the payment was $343.78 short, Cenlar refused the payment, sent it back to debtor's counsel, and contended that the stay lifted because the debtor did not cure the default in full.

As discussed above, the debtor testified at the hearing on March 19, 2007, that she talked to someone at Cenlar or New South before the December 6, 2006, deadline. The debtor also testified at the hearing on April 11, 2007, that her conversation with a representative of the lender could have been after that deadline. In either event, the debtor testified at both hearings that she did not make the full payment before the deadline and was not able at that time to make the full payment. Although the debtor testified that she made an offer to pay the $343.78 balance in December.

At the April 11, 2007, hearing the debtor explained that she now has funds that will almost bring her current on her mortgage payments. The debtor has six money orders for $500 each. She has an additional money order for $561.78 which the debtor represents is her payment for April 2007. The total funds the debtor has to pay Cenlar is $3,561.78.

Based on the Court's rough calculations, the debtor is about $3,800 in arrears on her current mortgage payments, including April 2007.[2]

---

[1] That amount included two monthly payments at $525.37 each, $50.00 for attorney fees, and $43.04 for late charges. See Debtor's Exhibit 1.

[2] The Court calculates the amount due as seven payments (October 2006 -April 2007) at $525.37 each plus late fees of about $22.00 each. The Court has not added Cenlar's fees and costs.

3

## II. Issues

The technical issue is: Did the stay lift when the debtor failed to cure her October 2006 and November 2006 mortgage arrears after notice from Cenlar that she was in default? The alternative issue is: Is it equitable to allow the debtor relief from operation of the August 3, 2006, order, because there was miscommunication between the debtor and the lender, because the debtor failed to cure the arrears by only $343.78, and because she now has funds to almost bring her current?

## III. Conclusions of Law

### A. Requirements for a Preliminary Injunction

Writing for the Court of Appeals for the Eleventh Circuit in Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205 (11th Cir. 2003), Judge Donald C. Pogue, sitting by designation from the United States Court of International Trade, lists the four requirements that must be met in order for this Court to issue either a temporary restraining order or preliminary injunction. He writes:

> A district court may issue a preliminary injunction where the moving party demonstrates:
>
> (1) a substantial likelihood of success on the merits;
> (2) that irreparable injury will be suffered unless the injunction issues;
> (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
> (4) if issued, the injunction would not be adverse to the public interest.

Id. at 1210 (citing Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir.2000); McDonald's Corp., 147 F.3d at 1306; All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir.1989)).

### B. Rule 60

Rule 60 of the Federal Rules of Civil Procedure, applicable to this proceeding by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;

4

(2) newly discovered evidence which by due diligence could not have
been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether heretofore denominated intrinsic or extrinsic),
misrepresentation, or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior
judgment upon which it is based has been reversed or otherwise vacated,
or it is no longer equitable that the judgment should have prospective
application; or
**(6) any other reason justifying relief from the operation of the
judgment.**

Fed.R.Civ.P. 60. Subsection (6) only is operative here.[3]

### C. Rule 60(b)(6)

Orders of this Court are subject to the provisions of Rule 60(b)(6).[4] This is especially true with regard to orders granting automatic "future" relief from the automatic stay. Such orders can be brutal. Where they do not promote their intended purposes, they must be reviewed. And where enforcement produces inequitable results, Rule 60(b)(6) offers an alternative. That is the situation here.

It is clear that the parties' intent in entering into a consent agreement for "future" relief from the automatic stay was to encourage the debtor to make her mortgage payments. In addition, it is clear from the mortgagee's perspective, such an order would limit its future costs and time if payments were not made.

In contrast, Rule 60(b)(6) allows this Court to consider an alternative. That alternative, as explained by the cases below, is whether "extraordinary circumstances" exists. As discussed below, this Court finds that they do.

---

[3] While Rule 60 relief is normally raised through a motion, the Court considers the issue raised by the debtor's complaint and motions.

[4] According to Rule 60(b), relief under subsection (6) must be brought within a reasonable time. Fed.R.Civ.P. 60(b)(6). What is reasonable depends on the facts of each case. Golden Oldies, Ltd. v. Scorpion Auction Group, Inc., 199 F.R.D. 98, 100 (E.D.N.Y. 2001); Harduvel v. General Dynamics Corp., 801 F.Supp. 597, 603 (M.D. Fla. 1992). Periods equal to, and in excess of, the twenty months here have been considered reasonable. Matter of Emergency Beacon Corp., 666 F.2d 754, 760 (2nd Cir. 1981); In re Krautheimer, 210 B.R. 37, 45-46 (Bankr. S.D.N.Y. 1997). Based on the facts, the Court finds that the time within which relief was requested here was reasonable.

5

Writing for the Court of Appeals for the Eleventh Circuit in In re Hughes, 873 F.2d 262 (11th Cir. 1989) Senior Circuit Judge John R. Brown, sitting by designation, wrote that there is, "A Place for Equity in Bankruptcy." Id. at 264. He explained:

> Without examining, or deciding, in detail whether and to what extent the decision is affected by the promulgation of Bankruptcy Rule 9024 and the extent, if any, that the matter is within the catch-all provision of comparable Rule 60(b)(6), we think that it is appropriate to follow what we long ago did in Goff. There we said: "considering all the facts and circumstances disclosed by the record, we conclude that it would be appropriate to remand the case to ... allow the bankrupt, at his own expense, a reasonable time in which to place his books and records in a condition that will substantially reflect his financial status." Goff v. Russell, 495 F.2d at 202. We conclude, therefore, that under Goff the bankruptcy judge should afford Hughes a further opportunity to avoid denial of discharge under § 727(a)(3) and (5) by presenting additional documents and records to the bankruptcy judge.

Id.

Clearly within this Circuit, this Court's consideration of Rule 60(b)(6) is appropriate here. In Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126 (11th Cir. 1994), Senior District Court Judge Truman M. Hobbs, sitting by designation, wrote:

> The trial court offered that it used Rule 60(b)(6) as a sanction against Hertz for failing to file an amended complaint. This constitutes error for two reasons. First, because a leave to amend is permissive, rather than mandatory, Briehler v. City of Miami, 926 F.2d 1001, 1002 (11th Cir.1991), sanctions are inappropriate. See also Mann v. Merrill Lynch, Pierce, Fenner, and Smith, Inc., 488 F.2d 75, 76 (5th Cir.1973) (impermissible to dismiss a case under Rule 41(b) for failure to amend complaint). Second, Rule 60(b)(6) is reserved for instances of genuine injustice, and does not permit a party or a judge to circumvent the clear commands of Rules 6(b) and 59(e). Rule 6(b) forbids a court to enlarge the time within which a Rule 59(e) motion may be served; condoning the trial court's use of Rule 60(b)(6) would serve to undermine finality, resurrect Boaz v. Mutual Life Ins. Co., 146 F.2d 321 (8th Cir.1944), and defeat the ends of Rules 6(b) and 59(e).

Id. at 1128 (footnote omitted).

And in Cavaliere v. Allstate Ins. Co., 996 F.2d 1111 (11th Cir. 1993), Circuit Judge Ed Carnes wrote, "To the extent Cavaliere's argument is based on the catch-all provision of Rule 60(b)(6), this Court has observed 'that relief under this clause is an

6

extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.' Griffin, 722 F.2d at 680...." Id. at 1115.

Other courts agree.[5] Particularly helpful is the description by the court in In re Fonner, 262 B.R. 350 (Bankr. W.D. Pa. 2001). That opinion reads in part:

> Rule 60(b)(6) is a "residual" provision designed to cover unforeseen contingencies. Lasky v. Continental Products Corp., 804 F.2d 250, 255 n. 9 (3d Cir.1986). Relief is appropriate under this provision "only upon a showing of 'exceptional circumstances' " and where "absent such relief an 'extreme' and 'unexpected' hardship will result." Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir.1977). Intervening developments or changes in the law, without something more, rarely constitute "extraordinary circumstances" for purposes of Rule 60(b)(6). Agostini v. Felton, 521 U.S. 203, 239, 117 S.Ct. 1997, 2018, 138 L.Ed.2d 391 (1997). A motion brought under Rule 60(b)(6) should be granted if "appropriate to accomplish justice." Klapprott v. U.S., 335 U.S. 601, 614-15, 69 S.Ct. 384, 390, 93 L.Ed.2d 266 (1949).

Id. at 355 (emphasis added).

In this regard, the decision of the Court of Appeals for the Tenth Circuit in In re Gledhill, 76 F.3d 1070 (10th Cir. 1996) is on point.

Briefly the facts and the issue, as summarized by Judge Bobby R. Baldock were:

> This appeal involves a complex procedural history. Plaintiff State Bank of Southern Utah ("State Bank") obtained a bankruptcy court order granting it relief from automatic stay to foreclose a judgment lien it held in property owned by Debtors John H. and Gloria K. Gledhill. Shortly before the foreclosure sale, the Chapter 7 Trustee filed, inter alia, a motion under Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b) requesting the bankruptcy court to vacate its earlier order granting State Bank relief from stay. The Trustee wanted the court to vacate its order lifting the stay so that the Trustee could liquidate the property for the benefit of all the creditors. State Bank vigorously opposed the motion, arguing that the Trustee's motion for relief from the order granting relief from the stay sought reimposition of the automatic stay, which amounted to a request for injunctive relief under Bankruptcy Rule 7001(7). Under Rule 7001(7), a proceeding "to obtain an injunction or other equitable relief" must be brought as an adversary proceeding. Because the Trustee sought relief by

---

[5] See note 7 (original footnote 8 to In re Gledhill, 76 F.3d 1070 (10th Cir. 1996)) for a list of cases where Rule 60 was considered in the context of a lift stay order.

7

motion as a contested matter--and not by initiating an adversary proceeding by serving a summons and a complaint--State Bank argued that the bankruptcy court lacked jurisdiction to consider the Trustee's motion.

Id. at 1072.

At the trial level, the bankruptcy court found that the trustee demonstrated circumstances that justified vacating the court's earlier order lifting the stay. The court then vacated the earlier order, which in turn "reimposed" the automatic stay and prevented the scheduled foreclosure sale. The district court affirmed. The circuit court affirmed.

Again, writing for the court Judge Baldock explained:

The Trustee filed a motion: (1) pursuant to Rule 9024 and Fed.R.Civ.P. 60(b) for relief from the order granting State Bank relief from the automatic stay ("Rule 60(b) motion"), and (2) to reimpose the automatic stay under 11 U.S.C. § 105(a) ( "§ 105(a) motion").

....

State Bank argues that bankruptcy courts have uniformly held that requests to reimpose the automatic stay require the filing of an adversary proceeding. The cases State Bank cite are inapposite. Significantly, State Bank directs us to cases that do not involve motions to vacate orders lifting the automatic stay under Rules 60(b) and 9024, but requests to reimpose the automatic stay under 11 U.S.C. § 105(a). The bankruptcy court in the instant case, however, did not reimpose the automatic stay under 11 U.S.C. § 105(a), but vacated its order granting relief from stay under Rule 60(b) and Rule 9024. The distinction between a Rule 60(b) motion to vacate an order lifting the stay and a request to reimpose the automatic stay under 11 U.S.C. § 105(a) determines whether the movant may proceed by motion as a contested matter under Rule 9014, or must file an adversary proceeding under Rule 7001. Courts have uniformly held that a request to reimpose the automatic stay under 11 U.S.C. § 105(a) constitutes "a proceeding to obtain an injunction or other equitable relief" under Rule 7001(7), which requires the filing of an adversary proceeding.[6]

---

[6] Original footnote 6 to this passage reads:

> See Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.), 878 F.2d 693, 701 (3d Cir.1989) ("[A] lapsed stay may be reimposed under the equitable

8

Case 07-00042-BGC    Doc 13    Filed 04/20/07    Entered 04/20/07 11:56:14    Desc Main
Document      Page 8 of 14

In contrast, State Bank cites no authority--nor have we found any--that stands for the proposition that a Rule 60(b) and Rule 9024 motion requesting a bankruptcy court to vacate an order lifting the automatic stay constitutes a request for an injunction that requires an adversary proceeding under Rule 7001(7).[7] Instead, in accord with our interpretation of the Rules, the courts that have addressed Rule 60(b) in this context agree that a party may seek relief from a bankruptcy court order lifting the automatic stay by filing a motion pursuant to Rules 9024 and 60(b) without

---

provisions of section 105(a), provided that the debtor has properly applied for such injunctive relief [under Rule 7001]."); Ramirez v. Whelan (In re Ramirez), 188 B.R. 413, 416 (9th Cir. P 1995) ("In order to have a vacated stay 'reimposed,' one must ordinarily file an adversary proceeding seeking an injunction under 11 U.S.C. § 105.") (Klein, J., concurring); Stacy Fuel & Sales, Inc. v. Ira Phillips, Inc. (In re Stacy), 167 B.R. 243, 248 (N.D.Ala.1994) ("Under the Federal Rules of Bankruptcy Procedure [a motion to reimpose the automatic stay under § 105(a) ] ... could not have been obtained by motion but rather necessitated the institution of an adversary proceeding."); In re Parker, 154 B.R. 240, 243 (Bankr.S.D.Ohio 1993) (holding that court has power to reimpose the automatic stay under § 105(a) but may do so only in adversary proceeding); American Indus. Loan Ass'n v. Voron (In re Voron), 157 B.R. 251, 252-53 (Bankr.E.D.Va.1993) (same); Nasco P.R., Inc. v. Chemical Bank (In re Nasco P.R., Inc.), 117 B.R. 35, 38 (Bankr.D.P.R.1990) ("The bankruptcy court has power under Section 105(a) to reimpose a stay ... [but a] party wishing to invoke the Court's injunctive power under Section 105(a) must file an adversary proceeding....").

[7]Original footnote 7 to this passage reads:

The dissent states that "[t]he weight of authority supports State Bank['s]" argument that Rule 60(b) relief in the instant case "constitutes injunctive relief requiring an adversary proceeding in accordance with Bankruptcy Rule 7001(7)." Dissent at 3. The dissent, however, like State Bank, fails to identify a single case in support of the proposition that a Rule 60(b) motion requesting a bankruptcy court to vacate an order lifting the automatic stay constitutes a request for an injunction under § 105 that requires an adversary proceeding. Instead, the dissent cites cases that do not even mention Rule 60(b) to support its argument that as a matter of law Rule 60(b) relief in the instant case constituted a request for injunctive relief under § 105. Indeed, the dissent fails to recognize the determinative distinction between a Rule 60(b) motion to vacate an order lifting the stay and a request to reimpose the automatic stay under 11 U.S.C. § 105(a).

9

filing an adversary proceeding.[8] Consequently, because the bankruptcy court vacated its order lifting the stay under Rule 60(b) as opposed to reimposing the stay under § 105, we reject State Bank's argument that settled precedent mandated that the Trustee seek Rule 60(b) relief by filing an adversary proceeding.

In sum, we hold that the plain language of Rules 9024 and 60(b) and settled precedent permitted the Trustee to request Rule 60(b)(6) relief from the order granting relief from stay by filing a motion as a contested matter. The district court did not err, therefore, by concluding that the bankruptcy court properly determined that the Bankruptcy Rules authorized the Trustee to proceed by motion without filing an adversary proceeding.

Id. at 1079-80 (footnotes 6,7,and 8 included) (footnote 9 omitted).

---

[8] Original footnote 8 to this passage reads:

> See Metmor Fin., Inc. v. Bailey (In re Bailey), 111 B.R. 151, 152-53 (W.D.Tenn.1988) (affirming bankruptcy court's order granting debtor's Rule 9024 and Rule 60(b)(6) motion to vacate an order lifting the automatic stay); Ramirez v. Whelan (In re Ramirez), 188 B.R. 413, 416 (9th Cir. BAP 1995) ("Occasionally, it might suffice to revive the stay by way of motion for reconsideration under Federal Rules of Civil Procedure 59(e) or 60(b), which are applicable in bankruptcy by virtue of Federal Rules of Bankruptcy Procedure 9021 and 9023 [sic].") (Klein, J., concurring); In re AL & LP Realty Co., 164 B.R. 231, 232-34 (Bankr.S.D.N.Y.1994) (recognizing that under Rules 9024 and 60(b)(6) debtor properly filed motion seeking relief from consent order modifying the automatic stay); In re Fuller, 111 B.R. 660, 661-63 (Bankr.S.D.Ohio 1989) (holding that a "motion to reinstate automatic stay" was properly filed under Rules 9024 and 60(b) as a motion to vacate a default order lifting the automatic stay); In re Keul, 76 B.R. 79, 82 (Bankr.E.D.Pa.1987) ("[A]n order granting relief from stay is subject to being altered or vacated pursuant to Fed.R.Civ.P. 60(b)(6) and Bankr. Rule 9024."); In re Kanuika, 76 B.R. 473, 477-78 (Bankr.E.D.Pa.1987) (allowing debtor to file a motion under Rules 9024 and 60(b) for relief from an order lifting the automatic stay); Commonwealth of Pennsylvania State Employees' Retirement Fund v. Durkalec (In re Durkalec), 21 B.R. 618, 619-20 (Bankr.E.D.Pa.1982) (granting Chapter 7 debtor's motion under Rule 60(b)(6) to vacate an order lifting the automatic stay due to changed circumstances).

Judge Baldock concluded:

> "Federal Rule of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988). We have observed that Rule 60(b) "gives the court a 'grand reservoir of equitable power to do justice in a particular case.' " Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir.1975) (en banc) (quoting Radack v. Norwegian America Line Agency, Inc., 318 F.2d 538, 542 (2d Cir.1963)), cert. denied, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). Rule 60(b)(6) grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just ... for ... any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). "District courts may grant a Rule 60(b)(6) motion only in 'extraordinary circumstances' and only when such action is necessary to accomplish justice." Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 729 (10th Cir.1993); see also Johnston v. Cigna Corp., 14 F.3d 486, 497 (10th Cir.1993) ("Relief under Rule 60(b)(6) ... is warranted only in exceptional circumstances"), cert. denied, 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995). A court may not premise Rule 60(b)(6) relief, however, on one of the specific grounds enumerated in clauses (b)(1) through (b)(5). Liljeberg, 486 U.S. at 863, 108 S.Ct. at 2204.
>
> We review a lower court's ruling on a Rule 60(b)(6) motion for abuse of discretion. Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1491 (10th Cir.1994). Because a court "has substantial discretion in connection with a Rule 60(b) motion," Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir.1990), "[w]e will reverse the district court's determination 'only if we find a complete absence of a reasonable basis and are certain that the district court's decision is wrong.' " Johnston, 14 F.3d at 497 (quoting Pelican Prod. Corp., 893 F.2d at 1147).
>
> Applying these principles to the instant case, we believe the district court correctly concluded that under the exceptional circumstances of this case the bankruptcy court did not abuse its discretion in granting the Trustee's motion for relief from the order lifting the stay under Rule 60(b)(6). The bankruptcy court emphasized that the circumstances of the case had changed significantly since it granted State Bank relief from stay to foreclose the property. The bankruptcy court granted State Bank relief from stay in part because Debtors had filed a serial petition in bad faith to prevent State Bank from foreclosing the property. Thus, in the context of the Chapter 11 reorganization, the February 17, 1993 order lifting the stay "punished" Debtors for seeking bankruptcy protection in bad faith, and allowed State Bank to foreclose its judgment lien. By December 1993,

11

however, the case had been converted to a Chapter 7 liquidation. A foreclosure sale in the Chapter 7 would not punish Debtors, but other creditors because the estate would receive less from a foreclosure sale to distribute to creditors than it would by permitting the Trustee to liquidate the property in a commercially reasonable manner.

Id. at 1080-81.

### D. Application of Rule 60(b)(6)

What factors should this Court consider in determining whether relief should be allowed under Rule 60(b)? Writing for the Court of Appeals for the Fifth Circuit in Seven Elves, Inc. v. Eskenazi, 635 F.2d 396 (5th Cir. 1981), (adopted by the Court of Appeals for the Eleventh Circuit in Rice v. Ford Motor Co., 88 F.3d 914, 919 (11th Cir. 1996)), Circuit Judge Tate explained:

> In United States v. Gould, 301 F.2d 353, 355-56 (5th Cir. 1962), quoting 7 Moore's Federal Practice P 60.19, at 237-39, this court delineated factors that should inform the district court's consideration of a motion under Rule 60(b): (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments. Id.

Id. at 402.

The Court has applied these factors to the immediate situation and finds that relief under rule 60(b) should be granted.

As discussed above, the Court of Appeals for the Eleventh Circuit recognized in Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126, 1128 (11th Cir. 1994) that, "Rule 60(b)(6) is reserved for instances of genuine injustice...." The pending matter is one of those rare instances.

12

First, it is clear that there was obvious confusion, misinformation, and miscommunication between the debtor and the lender. The debtor was told not to make payments until a workout plan could be approved. It is not unreasonable for the debtor to infer that a plan would be approved and more importantly that she would be allowed to cure the arrears through such a plan without the consequence of foreclosure. The debtor did not make payments. The workout plan is still under review.

Second, the facts are not completely clear as to whether the debtor contacted the lender before the December 6, 2006, deadline and was told that she should not send in additional funds until a workout plan could be approved. But the facts are clear that the debtor did not have sufficient funds to cure her default before the end of the deadline, but she had those funds shortly after the deadline.

Third, the debtor owed $1,143.78. She sent the lender $800.00. She was only $343.78 short and offered to pay the balance within December. The debtor testified that she could not cure the full amount by the December 6 deadline because her mother had recently died without funds for a burial. The debtor and her siblings paid the funeral and burial cost. The debtor's portion was $2,800.

If the debtor is bound by the future relief provision of the August 3, 2006, order, the stay lifted. But based on the standards above, the Court finds that she should not be bound. The debtor was not only just $343.78 short, she now has almost enough funds to pay the last seven months arrears and appears to have sufficient income to remain current after that.

Of course, in applying the legal principles discussed above, while the Court recognizes that final judgments should not lightly be disturbed, the Court finds that relief should be awarded here to achieve substantial justice. These are the extraordinary circumstances that support relief under rule 60(b).

Consequently, the Court finds that the debtor should be relieved from operation of the "future" relief provision of the August 3, 2006, order, as to any unpaid post-petition payments through April 2007. Therefore the stay did not lift and the foreclosure scheduled for April 24, 2007, may not be held.

Therefore, in regard to the debtor's request for a preliminary injunction, based on the above, the Court finds that: (1) there is a substantial likelihood of the debtor's success on the merits, that is the stay may not have lifted by operation of the order because the debtor is relieved from the future relief provisions of that order through April 2007; 2) if Cenlar were allowed to foreclose on the debtor's home, the debtor would suffer irreparable injury as a foreclosure would prevent the debtors from rehabilitating the mortgage in a Chapter 13 case; 3) there is no reasonable likelihood of the property depreciating in value during the time of the restraining order that will be issued forthwith; consequently, the threatened injury to the debtors is greater than any

damage the proposed injunction may cause the defendant; and 4) the issuance of the injunction will not disserve the public interest.

    Dated: April 20, 2007                    /s/Benjamin Cohen
                                                        BENJAMIN COHEN
                                                        United States Bankruptcy Judge

BC:pb

Case 07-00042-BGC   Doc 13   Filed 04/20/07   Entered 04/20/07 11:56:14   Desc Main
Document     Page 14 of 14